**UNITED FOODS, INC., Plaintiff–
Appellant,**

**v.**

**UNITED STATES of America;  United
States Department of Agriculture,
Defendants–Appellees.**

**No. 98–6436.**

United States Court of Appeals,
Sixth Circuit.

Argued:  Sept. 23, 1999

Decided and Filed:  Nov. 23, 1999

Bradley A. MacLean (argued and briefed), Tara L. Swafford (briefed), Farris, Warfield & Kanaday, Nashville, Tennessee, for Plaintiff–Appellant.

Barbara C. Biddle (briefed), August E. Flentje (argued and briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, D.C., for Defendants–Appellees.

Before:  MERRITT and CLAY, Circuit

**222**

Judges; ALDRICH,[*] District Judge.

## OPINION

MERRITT, Circuit Judge.

In this case of compelled, commercial speech challenged under the First Amendment, the Department of Agriculture requires the plaintiff, a mushroom producer, to contribute funds for advertising mushrooms, on a regional basis, as authorized by the Mushroom Promotion, Research, and Consumer Information Act of 1990, 7 U.S.C. § 6101 *et seq.*[1] The District Court upheld the Act and the government's action compelling payments for mushroom advertising. The plaintiff claims that other mushroom producers shape the content of the advertising to its disadvantage and that the administrative process allows a majority of producers to create advertising to its detriment. The issue before us is whether the answer to the First Amendment question presented here should be the same as in the recent case of *Glickman v. Wileman Bros. & Elliott, Inc.*, 521

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Enacted by Congress in 1990, the Mushroom Act states:

It is declared to be the policy of congress that it is in the public interest to authorize the establishment of an orderly procedure for financing through adequate assessments on mushrooms produced domestically or imported into the United States, program of promotion, research, and consumer and industry information designed to—
  (1)strengthen the mushroom industry's position in the marketplace;
  (2)maintain and expand existing markets and uses for mushrooms; and
  (3)develop new markets and uses for mushrooms.
7 U.S.C. § 6101(b). These policy objectives are supported by findings set forth in the Act that mushrooms are not only an important food valuable to the human diet, but that they play a significant role in this country's economy and that their production benefits the environment. The Act does not permit the regulation of prices or mandatory quantity or quality controls of mushrooms produced and sold by farmers, nor does it subsidize or restrict the growth of mushrooms or otherwise

U.S. 457, 117 S.Ct. 2130, 138 L.Ed.2d 585 (1997), in which the Supreme Court in a controversial 5–4 decision[2] upheld a similar agricultural advertising program in the heavily regulated California tree fruits business (peaches, plums and nectarines). But unlike the tree fruit business in *Wileman*, the mushroom growing business in the case before us is unregulated, except for the enforcement of a regional mushroom advertising program.

The government argues that the degree of regulation or "collectivization" of an industry should make no First Amendment difference on the compelled advertising issue so long as the compelled advertising is nonpolitical and so long as the plaintiff is not restricted in its own advertising. The plaintiff contends to the contrary that the constitutionality of the compelled speech under the 1990 Mushroom Act—in light of *Wileman*—must turn on the degree of regulation of the industry. The question for us is whether the degree of government

collectivize the industry. It is basically a commercial advertising statute designed to assess mushroom growers for the cost of advertising. 7 C.F.R. Part 1209.40(a).
  Pursuant to the Mushroom Act, the Secretary of Agriculture promulgated an Order establishing a Mushroom Council made up of mushroom producers nominated by producers and importers for appointment by the Secretary. 7 U.S.C. § 6104(b); 7 C.F.R. Part 1209. The Order generally directs the Council to "carry out programs, plans, and projects designed to provide maximum benefits to the mushroom industry." 7 C.F.R. § 1209.39(*l*). The Council's activities are funded through mandatory assessments on larger producers and importers of fresh mushroom products for domestic use, based upon poundage of mushrooms marketed in the United States and not to exceed a penny per pound. 7 U.S.C. § 6104(g), 7 C.F.R. § 1209.51. The Council has used these funds solely to finance generic advertising efforts on behalf of the mushroom industry.

2. *See, e.g.,* Nicole B. Casarez, *Don't Tell Me What to Say: Compelled Commercial Speech and the First Amendment*, 63 Mo. L. Rev. 929 (1998); Leading Case, *Commercial Speech— Compelled Advertising*, 111 Harv. L. Rev. 319 (1997).

regulation of an industry controls the outcome or whether the government is right that this is irrelevant under *Wileman*.

■ In prior restraint and compelled speech cases involving nonbroadcast political speech, the First Amendment prohibition is nearly absolute, *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), holding that newspapers have a right to publish without prior restraint, *West Virginia v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), holding that schoolchildren may not be compelled to join in a flag salute ceremony, and *Miami Herald v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), holding that newspapers may not be compelled to publish a reply by political candidates. But commercial speech compelled by government is governed by a different, and as yet unsettled, set of principles which require a court to balance a number of factors according to its judgment concerning the welfare of buyers and sellers in the market place.

In the *Wileman* case, the Supreme Court emphasized and reemphasized that the compelled advertising program for California tree fruits under the Agricultural Marketing Agreement. Act of 1937 contemplates "a uniform price to all producers in a particular market," a "policy of collective, rather than competitive, marketing" and an exemption from the antitrust laws in order "to avoid unreasonable fluctuation in supplies and prices." *Wileman*, 521 U.S. at 461, 117 S.Ct. 2130. In his opinion for five members of the Court, Justice Stevens repeatedly "stress[ed] the importance" of the fact that the advertising takes place "as a part of a broader collective enterprise in which [the producers'] freedom to act independently is already constrained by the regulatory scheme." *Id.* at 469, 117 S.Ct. 2130. In contrast, the mushroom market has not been collectivized, exempted from antitrust laws, subjected to a uniform price, or otherwise subsidized through price supports or restrictions on supply. Except for the compelled advertising program assessing growers based on their volume of mushroom production, there appears to be a relatively free market in mushrooms, both processed and fresh.[3]

On the other side of the ledger, the government correctly argues that Justice Stevens also emphasized repeatedly in his opinion that the compelled agricultural advertising in *Wileman* is not a *restriction* on commercial advertising as in cases that have invalidated such regulation, *see, e.g.*, *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), because separate, individual, producer advertising of tree fruits is not prohibited or restricted. *See Wileman*, 521 U.S. at 469–70, 117 S.Ct. 2130. The opinion empha-

---

**3.** Justice Souter's twenty-five page dissenting opinion in *Wileman* provides an extensive history of compelled advertising in the market for agricultural commodities. His reading of the history of the agricultural regulations is that it shows that the advertising is simply the result of interest group lobbying, not a response to economic conditions. See *Wileman*, 521 U.S. at 491–99, 117 S.Ct. 2130 (Souter, J., dissenting). Justice Souter's dissent recounts that in 1952 Congress began providing for compelled advertising for an ever-expanding list of agricultural commodities. Sometimes the legislation, and the marketing orders authorized by the legislation, cover a commodity from just one section of the country—for example, California peaches but not Georgia peaches. In recent years Congress has added many farm products to the list in which compelled advertising is the main or the only form of regulation. Justice Souter explains that this comes about because of "the view of the Department of Agriculture that 'any fruit or vegetable commodity group which actively supports the development of a promotion program by this means should be given an opportunity to do so.'" *Id.* at 495–96, 117 S.Ct. 2130 (citing S.REP. No. 92–295, at 2 (1971)). Justice Souter concludes that these programs of compelled advertising appear to rest only on "the preference of a local interest group." *Id.* at 497, 117 S.Ct. 2130. "Without more, the most reasonable inference is not of a substantial Government interest, but effective politics on the part of producers who see the chance to spread their advertising costs." *Id.* at 498, 117 S.Ct. 2130.

sizes that the test for compelled advertising is not the same as the four-part test for restrictions on advertising set out in *Central Hudson*. *See id.* The government also correctly argues that Justice Stevens repeatedly emphasizes that no "symbolic," "ideological" or "political" speech is involved in the tree fruit advertising. *See id.* Justice Stevens' opinion sets out these various factors concisely when he says that the compelled advertising of tree fruits passes muster "because (1) the generic advertising of California peaches and nectarines is unquestionably germane to the purposes of the marketing orders [which collectivize the industry] and, (2) *in any event*, the assessments are not used to fund ideological activities." *Wileman*, 521 U.S. at 473, 117 S.Ct. 2130 (emphasis added).

The question for us then is whether these two elements—(1) germaneness to a valid, comprehensive, regulatory scheme and (2) nonideological content—are independent of each other and each provide a sufficient basis for upholding compelled commercial speech. In other words, even though the mushroom advertising program before us is not "germane" to any collective program setting prices or supply, does the fact that the advertising is "nonideological" or "nonpolitical" in nature mean that it should be permitted under the First Amendment?

■ We do not read the majority opinion in *Wileman* as saying that any compelled commercial speech that is nonpolitical or nonsymbolic or nonideological does not warrant First Amendment protection. We conclude that the explanation for the *Wileman* decision is to be found in the fact that the California tree fruit industry is fully collectivized and is no longer a part of a free market, as well as in the nonpolitical nature of the compelled speech. The majority uses this concept of collectivization and the nonideological nature of the advertising together. The conjunction "and" germaneness "and" nonpolitical—is used in the Court's holding. Our interpretation of

*Wileman* is that if either of the two elements is missing—either the collectivization of the industry or the purely commercial nature of the advertising—the First Amendment invalidates the compelled commercial speech, absent some other compelling justification not present in the case before us. The Court's holding in *Wileman*, we believe, is that nonideological, compelled, commercial speech is justified in the context of the extensive regulation of an industry but not otherwise. The purpose of this principle joining regulation and content is to deter free riders who take advantage of their monopoly power resulting from regulation of price and supply without paying for whatever commercial benefits such free riders receive at the hands of the government. Whether wise or unwise, or true or untrue, the legislative theory behind such extensive regulation is that the interests of producers and consumers are furthered by the monopoly powers inherent in government control of price and supply. In exchange for such power in the market place, members of the industry may have to provide certain benefits to their industry in the form of payments for nonideological advertising of industry products. If an economic actor chooses to remain aloof from the regulated industry, he owes no reciprocal duty to promote the industry; but if he chooses to join, he has a reciprocal duty to promote its interest. This principle of reciprocity designed to control free-ridership is essentially the same basis upon which the Supreme Court upheld some, and struck down other, compelled speech in the union, closed-shop context in *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991).

■ Applying this interpretation to the case at hand, we find that the context of the mushroom business is entirely different from the collectivized California tree fruit business. Mushrooms are unregulated. Hence the compelled commercial speech is not a price the members must pay under the reciprocity principle in or-

der to further their self-interest which is regarded as arising from heavy regulation through marketing orders controlling price, supply and quality. Thus in the absence of extensive regulation, the effort by the Department of Agriculture to force payments from plaintiff for advertising is invalid under the First Amendment. The portions of the Mushroom Act of 1990 which authorize such coerced payments for advertising are likewise unconstitutional.

Accordingly, the judgment of the District Court is reversed.